# HESSE, NEWMAN, & COMPANY
## v.
# G. LEDESMA & COMPANY.

### Equity, No. 951.

#### INJUNCTION BOND.

**Restraining Order—Bond.**

1. A restraining order may be issued without a bond, but where the hearing has been unavoidably postponed from time to time for several months, the court will require such bond as it would have required at the beginning had the delay been foreseen, and when so fixed will be made to cover damages since the issuing of the restraining order.

**Injunction Bond—Amount.**

2. An injunction bond should cover costs, counsel fees, cost of translations, expenses of incidental receivership, and any actual money loss.

Hesse, Newman, & Co. v. Ledesma & Co.

Injunction Bond—*Ex Post Facto.*

3. A court cannot do anything *ex post facto* any more than the Constitution permits Congress to do it, but as it appears something should have been done in the past, the court may refuse to proceed unless that is covered by a bond in the case.

Opinion filed February 23, 1915.

*Messrs. Alvarez Nava & Dominguez* for complainant.

*Mr. H. G. Molina* for C. H. Westphaling.

HAMILTON, Judge, delivered the following opinion:

This matter comes up upon the motion of the defendant Westphaling to require the complainant to give a bond in the nature of an injunction bond in connection with the restraining order which this court issued in October. It has been argued earnestly. There are several points which will have to be considered.

1. In the first place, whether a bond should be required at all. As to that I think the course of the court is clear. I think there should be a bond of some sort. The court had not at the time that the order was granted any idea that the hearing would be deferred as long as it has. It supposed that it was a matter of a few days. It is argued that the delay has been due to the defendant Westphaling, that is to say, his attorney, Mr. Molina, who was called to the States. I do not remember whether it was in open court, but he certainly told the court that it was not material to decide the case before his return, the court not being able to decide it up to a day or two before

he left.  He returned in January, I believe, and the decision was made as promptly as possible after his return.  It was argued that this constituted laches on his part which would prevent him from now asking for a bond.  The court cannot take that view of it.  It is not a question of laches on the part of Westphaling, but a question of what is right on the part of the court.  The court has extended its arm to arrest, in a perfectly proper manner, but still a strong one, the exercise of rights which are claimed by a party under a local law, and the court would now, after an interval of three months, be glad, so far as it is within its power, to restore the *stalus quo* by requiring a bond.  Now how far can the court go in that matter? That is the next question.  The court is disposed to require a bond now because it would have required a bond at the time the order was granted if it had any idea or any reason to foresee that the matter would remain undecided as long as it has. Equity Rule 73, Judicial Code, § 263 [36 Stat. at L. 1162, chap. 231, Comp. Stat. 1913, § 1240].

2. In the second place then, that being established, what damages would possibly come within such a bond, so as to aid the court in fixing its amount?  This is not saying, of course, that 1 cent will be due upon a bond.  It is simply getting an idea as to what comes within the scope of the bond, leaving for future discussion, if it ever comes up at all, what properly can be proved.  If the court had required a bond at the time of granting the order, it might cover costs, counsel fees, cost of translations, receivership expenses, and actual money loss to the defendant Westphaling during its term.  It very likely would cover those, and possibly more.  Now it has been said that the property has deteriorated, I believe about $3,000, by

Hesse, Newman, & Co. v. Ledesma & Co.

cane taken off. That might mean—I do not say that it does—that the security has been impaired to this extent. I do not know the expense of the translations, but it would hardly exceed a few hundred dollars. Counsel fees I would not like to fix in advance, but they would be certainly some hundreds of dollars. It looks to me as if conservatively the expenses would hardly exceed $5,000, and, at all events, under all the circumstances of the difficulty of communication with principals, I am not disposed to go beyond that. If there is any further damage, I think it could be taken care of in the future, but I do not think it could be more as to anything in the past, and I will fix the amount at $5,000, and let it cover damages since the issuing of the restraining order.

3. The objection is made, in the third place, that the court cannot do this because it would be proceeding *ex post facto*. Of course, a court cannot do anything *ex post facto* any more than the Constitution permits Congress to do it. Such, however, is not the case. The way this comes up and the only way the court could enforce the provision is to say that unless a bond in the sum of $5,000, conditioned as above, is furnished within forty-eight hours, it will vacate the restraining order. If there is property on the Island to the extent indicated, there ought to be no difficulty in doing that, or even if it is necessary to communicate abroad. Under all the circumstances, the court would hardly feel justified in going beyond two days, because the whole case may be decided in three or four days. This still may leave the defendant without remedy for cost bond, but I do not know any other way to get at that right now. If that should happen, it would be the fault of the defendant in not moving sooner. I could not require anything

Hesse, Newman, & Co. v. Ledesma & Co.

until it is asked for, and the most I can do is to fix what I would have fixed when the order was originally made, and enforce it in the only way I can enforce it, by saying that if the bond is not furnished in this short time, the restraining order will be dissolved.